625 So.2d 1347 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Burnell CHAPMAN, Jr., Defendant-Appellant.
No. CR93-303.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Writ Denied September 20, 1993.
Paul Peter Reggie, Lake Charles, for State of Louisiana.
Carl Arthur Leckband, Jr., Lake Charles, for Burnell Chapman, Jr.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Defendant, Burnell Chapman, Jr., appeals his conviction of Driving While Intoxicated, Second Offense. We reverse, finding there was insufficient evidence to support the conviction.

FACTS
On January 19, 1992, at approximately 1:39 a.m., Troop D received a call concerning an abandoned vehicle in a field off of Carlyss Road in Calcasieu Parish. Trooper Paul Wesley Brady was dispatched and arrived at the scene at approximately 1:55 a.m. Trooper Brady ran a license plate check on the vehicle and found it registered to Cassaundra LeJeune, the girlfriend of the defendant. Thereafter, while in the process of investigating the actual physical consequences of the accident, Trooper Brady noticed a white pick-up truck approach the scene and pull in front of him. Trooper Brady walked toward the vehicle at which time the driver stepped out of the vehicle and identified himself as David Guidry. Mr. Guidry stated that he had given the driver of the abandoned vehicle a ride to his girlfriend's house. Trooper Brady asked for a physical description of the driver. Mr. Guidry informed Trooper Brady that the driver of the vehicle was Burnell Chapman, Jr., a good friend of his, and that there were no other passengers. Mr. Guidry told Trooper Brady that defendant had arrived at his home about five minutes before and asked for a ride home. Mr. Guidry further stated that he was passing the accident on his way home from dropping the defendant off and had stopped to inform the trooper of the events relating to the accident. Trooper Brady then asked Mr. Guidry to *1348 show him where he had dropped defendant off.
Initially, Trooper Brady spoke with Cassaundra LeJeune, the registered owner of the car at the time of the accident. At this time Trooper Brady asked defendant to step outside and defendant complied. Trooper Brady testified that he could smell alcohol on defendant's breath. Trooper Brady also noticed that defendant was swaying and that his speech was slurred. Trooper Brady asked defendant if he was the driver of the vehicle and at first defendant replied that Ms. LeJeune had been the driver. However, defendant subsequently changed his story and admitted that he had been the driver of the vehicle involved in the accident. Trooper Brady asked defendant if he would participate and thereafter administered, a field sobriety test consisting of the horizontal gaze nystagmus test and the one leg stand test. Trooper Brady testified that when testing defendant for "smooth pursuit" he had none. Instead Officer Brady observed a jerking motion in both eyes. Trooper Brady testified that this is one indicator of intoxication. Defendant fared no better on the one leg stand test. Defendant had difficulty following instructions and began the test while Trooper Brady was still in the process of explaining the directions. Thereafter, defendant began the test by lifting his left leg and placing it down at count 1004. At that time defendant leaned toward the wall and put his hand out as if to catch himself and Trooper Brady grabbed defendant to keep him from falling. Thereafter, defendant switched legs and began his count at 1005. Defendant placed his foot down at 1010, 1014, 1017 and then stated that he could not complete the test because of a bad back.
After administering the field sobriety test, Trooper Brady advised defendant that he was under arrest for D.W.I. and advised him of his Miranda rights. Defendant was then transported to the Sulphur Police Department and advised of his rights in relation to the Intoxilyzer test. Defendant signed a form acknowledging that he had been advised of these rights. The results of the Intoxilyzer test revealed a .117 breath alcohol reading.
In the Uniform D.W.I. Arrest Report, the defendant informed Trooper Brady that he had been drinking and had consumed two drinks of VO and 7-Up and that he was on medication and had taken a dosage around 6:30 p.m. on the prior evening. Furthermore, defendant informed Trooper Brady that he had not had any alcoholic beverage since the accident.
The defendant, testifying at trial, related the following explanation concerning the accident. Defendant stated that he had gone to the store to get a liter of 7-Up. He met someone at the store and gave them a ride home. Defendant testified that after dropping them off he observed something run across the road. Defendant tried to dodge it and ran off the road hitting a fence and became bogged down in the field. Defendant testified the accident occurred between 11:30 p.m. and 12:00 a.m. He testified that he had not had one drink at this point. He stated that he tried to get his vehicle out of the field for fifteen to twenty minutes and then walked to Mr. Guidry's home to ask Mr. Guidry if he would bring him home. On the way home Mr. Guidry stopped at the store to purchase 7-Up because defendant had left the other bottle in his car.
Defendant further testified that he asked his girlfriend to fix him a drink. Defendant said that he drank out of a twelve to sixteen ounce glass and that the mixture was two-thirds alcohol to one-third 7-Up. Defendant stated that he was on his second drink when the officers arrived. Defendant additionally stated that he did not drink anything before the accident and only drank afterwards because he was nervous.
Defendant was charged by bill of information on July 30, 1992, with one count of Driving While Intoxicated, Third Offense, in violation of La.R.S. 14:98.
On January 7, 1993, after a bench trial, the defendant was found guilty of D.W.I., Second Offense and on January 21, 1993, sentenced to six months imprisonment without benefit of probation, parole or suspension of sentence.

*1349 ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error defendant alleges the trial judge erred in denying defendant's motion for a new trial in that the verdict was contrary to the law and the evidence. Defendant alleges the testimony and evidence presented by the State does not support a conviction for D.W.I. because there was insufficient evidence presented to prove that defendant was intoxicated while operating a vehicle as required by La.R.S. 14:98. This statute provides, in pertinent part:
A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood;
This statute requires that the state prove 1) defendant was operating a motor vehicle or other conveyance and 2) defendant was intoxicated while operating the vehicle. State v. Fontenot, 408 So.2d 919 (La.1981). Defendant challenges the sufficiency of the evidence presented regarding the second element.
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Incorporating this rule under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3d Cir.), writ denied, 443 So.2d 585 (La.1983).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
In this case, defendant presented an hypothesis of innocence to the trial judge. He testified that he did not drink before the accident, and only began drinking afterwards because he was nervous. The trial judge, although admitting the case was extremely close, expressly rejected defendant's testimony on the basis that "in order to believe the defendant, one would have to believe the police officer is lying".
Apparently, the trial judge determined this due to the fact that Trooper Brady testified that in asking defendant questions pertaining to the Uniform D.W.I. Arrest report, the defendant informed Trooper Brady that he had taken medication at around 6:30 p.m., had been involved in an accident and had been drinking but had not had a drink since the accident. However, defendant testified that if he told Officer Brady that he had not had a drink since the accident he had misunderstood the question. Trooper Brady admitted defendant could have misunderstood the question. Generally, the question of credibility of witnesses is within the sound discretion of the trial judge. State v. Miller, 495 So.2d 422 (La.App. 3d Cir.1986). However, in the present case this is not a case in which this court must determine who "lied". Rather there is sufficient testimony from both defendant and Trooper Brady to conclude that defendant could have misunderstood the question posed by Trooper Brady.
Furthermore, the trial judge's disbelief of defendant's testimony does not necessarily mean the state has met its burden of proof in this case. The "circumstantial evidence test" and the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), test are not completely separate. "Ultimately, all evidence, direct and circumstantial must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden". State v. Porretto, 468 So.2d 1142, 1146 (La. *1350 1985). Notwithstanding the trial judge's failure to believe the defendant's version of the events, the state presented no evidence that would show that defendant was intoxicated when he drove the vehicle. Simply proving intoxication while defendant is in or near a vehicle has been held to be insufficient evidence to sustain a D.W.I. conviction. State v. Rutan, 448 So.2d 267 (La.App. 3d Cir. 1984).
In the instant case the defendant testified the accident occurred between 11:30 p.m. and 12:00 a.m. Furthermore, Mr. Guidry, testifying on behalf of the state, stated the defendant had come by his house at around 1:00 a.m. and he had taken defendant home and was with defendant for around forty-five minutes and saw defendant drink something although he was not sure what it might have been.
Mr. Guidry also testified he did not perceive that the defendant had been drinking when he initially encountered him. In any event, defendant was not arrested until 2:35 a.m. and did not submit to the Intoxilyzer test until 3:05 a.m. At least an hour and thirty-five minute time period elapsed before Trooper Brady arrested defendant and at least two hours elapsed before defendant submitted to the Intoxilyzer test. Furthermore, because this was a single car accident there was no evidence presented by the state to suggest when the defendant's vehicle left the road and became mired in the field. Trooper Brady admitted there was nothing about the vehicle that would indicate its occupant had been drinking.
The circumstantial evidence fails to exclude or negate every reasonable hypothesis of innocence as required by law. The evidence fails to exclude the claim of defendant that after the vehicle left the roadway, he tried unsuccessfully to get the car out of the field; went to Mr. Guidry's home to obtain a ride and began drinking after the occurrence of the accident because he was nervous. The state failed to meet its burden of proof. Thus, defendant's conviction is reversed.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
The second assignment of error was not briefed and is therefore considered abandoned in compliance with Uniform Rules Courts of Appeal 2-12.4. In the third assignment of error defendant contends he was not advised of his Miranda rights or those rights unique to the offense of D.W.I. and therefore the test results and statements made by him should not have been allowed into evidence. Given our finding in the first assignment of error this issue need not be addressed.

ERROR PATENT
La.C.Cr.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
Our review of the record reveals the defendant was not advised of the three year prescriptive period for seeking post-conviction relief. La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. However, in light of our finding as to the first assigned error, we need not direct the district court to inform defendant of the provisions of article 930.8. Cf. State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.1993).

DECREE
The judgment of the trial court is reversed and defendant's sentence is vacated.
REVERSED.