# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **18th day of October, 2017**, are as follows:



**PER CURIAM**:


2017-OK-0081        STATE OF LOUISIANA v. CALVIN LEWIS (Parish of Jefferson)

                    Finding the evidence sufficient, when viewed in the light most
                    favorable to the prosecution under the due process standard of
                    Jackson v. Virginia, for the trial court to reasonably conclude
                    defendant operated his vehicle while intoxicated until it
                    stalled, we reverse the court of appeal and reinstate defendant's
                    conviction and sentence.
                    REVERSED

SUPREME COURT OF LOUISIANA

No. 2017-OK-0081

STATE OF LOUISIANA

VERSUS

CALVIN LEWIS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FIFTH CIRCUIT, PARISH OF JEFFERSON

PER CURIAM

On March 27, 2015, a Jefferson Parish Sheriff's deputy encountered a truck stopped in the middle of the roadway late at night. He found defendant inside attempting to restart the truck. Defendant, who smelled of alcohol and whose speech was slurred, explained that the truck had just stalled and would not restart. The deputy noticed that the truck's engine was still quite warm when he attempted to restart it with jumper cables. The truck could not be restarted, however, and was eventually towed away. There were no alcohol containers in or around the vehicle.

When defendant got out of the truck, he leaned on it to steady himself. Defendant was arrested after he failed field sobriety tests. At the Westwego Police Department, defendant registered a blood alcohol level of 0.19. After he was *Mirandized*, defendant claimed he drank one beer several hours earlier in the afternoon.

Defendant was charged with misdemeanor first-offense driving while intoxicated, La.R.S. 14:98. At trial, defendant denied he was in the truck attempting to restart it when the deputy arrived. Defendant claimed that he drank a

half pint bottle of Wild Irish Rose[1] after the vehicle stalled, threw the empty bottle into the grass, and he was just leaving to walk to his cousin's house for assistance when the deputy arrived. The trial court found him guilty as charged and sentenced him to serve 60 days in parish jail, suspended, 48 hours of in-home incarceration, and 11 months of probation.

In a split decision, the court of appeal reversed defendant's conviction and sentence. *State v. Lewis*, 16-0614 (La. App. 5 Cir. 12/19/16) (unpub'd). While recognizing that the State presented sufficient evidence that defendant was intoxicated, the majority of the panel found the circumstantial evidence insufficient to exclude the reasonable hypothesis of innocence advanced by defendant at trial, i.e., that he became intoxicated by drinking Wild Irish Rose after the vehicle stalled. In addition, the majority of the panel found that, although defendant was intoxicated when he repeatedly turned the key in the ignition, this did not constitute operation of the vehicle within the meaning of La.R.S. 14:98. In reaching that conclusion, the majority relied on jurisprudence from other jurisdictions where courts have found that when a vehicle is incapable of immediately being placed into motion, due to mechanical problems, a lack of gas, or other problems that cannot be easily overcome, the accused cannot be found to have operated the vehicle even if he attempts to start it.

Judge Gravois dissented, finding that defendant operated the vehicle within the meaning of La.R.S. 14:98 the moment he attempted to start the vehicle as the

---

[1] The popularity of cheap fortified wines evidently began during the Great Depression. *See* Kevin Zraly, *Kevin Zraly's American Wine Guide* (2006) p. 38 ("Prohibition produced the Roaring Twenties and fostered more beer and distilled-spirit drinkers than wine drinkers, because the raw materials were easier to come by. But fortified wine, or medicinal wine tonic—containing about 20 percent alcohol, which made it more like a distilled spirit than regular wine—was still available and became America's number one wine. Thunderbird and Wild Irish Rose, to name two examples, are fortified wines. American wine was soon more popular for its effect than its taste; in fact, the word wino came into use during the Depression to describe those unfortunate souls who turned to fortified wine to forget their troubles."). Like other flavored fortified wines in its niche—Night Train and Thunderbird—Wild Irish Rose is memorialized in

deputy approached. Moreover, Judge Gravois found that the trial court reasonably discounted defendant's testimony that he became intoxicated after the car stalled by drinking a small bottle of wine under the circumstances here because the vehicle's engine remained very warm and the deputies did not find an empty bottle of Wild Irish Rose in or near defendant's truck. We agree with the latter contention and find it unnecessary to address the former.

Under the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." When reviewing a conviction based upon circumstantial evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. *See State v. Morris*, 414 So.2d 320, 321–22 (La. 1982) (citation omitted); *see also State v. Captville*, 448 So.2d 676, 680 (La. 1984) ("When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt."). The reviewing court "does *not* determine whether another *possible* hypothesis has been suggested by defendant which *could* explain the events in an exculpatory fashion[; rather, the reviewing court] evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational factfinder could not 'have found proof of guilt beyond a reasonable doubt.'" *Captville*, 448 So.2d at

song.

3

680 (emphasis in original; citation omitted).

Here, the court of appeal correctly found the evidence of defendant's intoxication to be clear. Although defendant could have consumed a half pint of Wild Irish Rose after his vehicle stalled, that hypothesis, after viewing all of the evidence in the light most favorable to the prosecution—including the deputy's observation of the warm engine, defendant's level of intoxication in comparison to the quantity of alcohol he claimed to consume, and his changed version of events between the night of the arrest and trial—is not so reasonable that a rational factfinder could not have found proof of guilt beyond a reasonable doubt that defendant operated his vehicle while intoxicated until it stalled.

To "operate" a vehicle in Louisiana, a person must exercise or have exercised "some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion." *State v. Rossi*, 98-1253, p. 1 (La. App. 5 Cir. 4/14/99), 734 So.2d 102, 102–03. It is not necessary that the actions have any effect or cause the vehicle to move. *See State v. Jones*, 97-1687, pp. 3–4 (La. App. 1 Cir. 5/15/98), 714 So.2d 819, 821 ("operating" shown when deputy awoke a drunken driver, asleep at the wheel of a car parked in a convenience store parking lot with its engine running, and the driver revved the motor and tried to shift); *State v. Brister*, 514 So.2d 205, 207 (La. App. 3 Cir. 1987) ("The term 'operate' includes merely controlling the vehicle. Doing anything with regard to the mechanism of a motor vehicle, whether it has any effect on the engine or not, is also included in the term 'operate.'").

While the question of whether defendant's attempts to start a vehicle that could not be started while he was intoxicated constituted operating the vehicle in the context of La.R.S. 14:98 presents an interesting question of law, the trial court found defendant guilty after making a credibility determination and on the basis of

4

the State's evidence that defendant actually drove the car while intoxicated before it stalled. As discussed above, that determination appears reasonable, and therefore the legal question need not be addressed at this juncture. Finding the evidence sufficient, when viewed in the light most favorable to the prosecution under the due process standard of *Jackson v. Virginia*, for the trial court to reasonably conclude defendant operated his vehicle while intoxicated until it stalled, we reverse the court of appeal and reinstate defendant's conviction and sentence.

**REVERSED**