NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-606 consolidated with 18-605, 18-607

STATE OF LOUISIANA

VERSUS

SHELTON BROADWAY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2014-CR-184550-A
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

AFFIRMED.

**Hon. Charles A. Riddle, III**
**District Attorney**
**Jonathan T. Gaspard**
**Assistant District Attorney**
**Twelfth Judicial District**
**P.O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Holli Ann Herrle-Castillo**
**LA  Appellate Project**
**P.O. Box 2333**
**Marrero, LA 70073**
**(504) 345-2801**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Shelton Broadway**

**EZELL, Judge.**

On December 16, 2014, the State filed a bill of information charging Defendant Shelton Broadway and two co-defendants with simple burglary, in violation of La.R.S. 14:62. Said co-defendants did not participate in the trial at issue. On February 18, 2016, Defendant waived his right to a jury trial. The case was consolidated with burglary proceedings under two other docket numbers on September 6, 2017. The bench trial commenced on October 18, 2017; the trial court reached a verdict of guilty on the same date. The State informed the trial court that it would file habitual offender proceedings. Said proceedings were filed under a separate docket number.

On March 21, 2018, Defendant filed a motion for appeal. He now seeks review by this court, assigning a single error pursuant to this docket number.

## FACTS

At about 7:30 a.m. on August 15, 2014, pharmacy technician Patricia Andrus arrived at her business, Scallan's Pharmacy, in Plaucheville, Louisiana, and realized that the alarm was not functioning. When she checked her "prescription department" she found that it had been ransacked and that there was a hole in the back wall of the business. Also, a safe was missing; there was damage to the back door of the store, but it had not been breached; near the hole in the wall, the security system had been damaged and disabled. Ms. Andrus did an inventory to see what was missing. She testified that she never calculated the value of the stolen medications but stated that at least six different kinds of drugs were missing, including oxycodone, methadone, and hydrocodone. An officer from the Avoyelles Parish Sheriff's Office responded to the scene.

Detective Jeremiah Honea testified regarding location data that was gleaned from Defendant's cellphone records. Said records showed that Defendant's cellphone was near a cellphone tower less than a half-mile from Scallan's Pharmacy on the date of the crime between 3:20 a.m. and 4:12 a.m. At 3:20 a.m., Defendant's cellphone was used to call accomplice Keeshla Stagg; the call lasted approximately 15 minutes. Ms. Stagg sent a text to his phone at 4:06 a.m. advising Defendant not to forget "[t]he picks of the tree." At 4:12 a.m., Defendant's cellphone was used to call Ms. Stagg; the call lasted about six minutes. The records showed the phone at 4:47 a.m. on a route south into St. Landry Parish; the safe missing from the pharmacy was found along that same route. At 7:26 a.m., the phone was in Baton Rouge, by 7:43 a.m., it was near Defendant's house. The cellphone records showed that Ms. Stagg's cellphone was near the same Plaucheville cell tower during the same time period and left during the same time period by the same route. The detective acknowledged that cell tower location data is not always exact but will show the general area or town a person is in. Also, a cellphone generally operates in conjunction with the tower closest to it.

When police searched Defendant's residence, they found a sledge hammer, electric drills, grinders, and bolt-cutters; one bag of tools they found also contained a mask, gloves, and a hoodie.

The investigation also led to the arrest of an accomplice named Ms. Stagg. Ms. Stagg told investigators that she had driven Defendant and other accomplices to various locations in order for them to burglarize pharmacies. Some medications from Scallan's were found in her storage locker; before the trial at issue, she pled guilty in connection with this burglary, one of the other burglaries that was the subject of the consolidated proceeding, along with another that was not.

When Ms. Stagg initially took the stand, she acknowledged having pled guilty to burglaries in Avoyelles Parish but denied that Defendant was involved. She claimed that any information she allegedly gave implicating Defendant was paraphrased. At that point, she also claimed her earlier pleas were "best interest" pleas. Further, she specifically testified that she did not know anything about the burglaries. During a brief cross-examination, she testified that she sometimes borrowed Defendant's vehicle and that he sometimes left his license in it when she borrowed it. Also, she stated that she sometimes borrowed his cellphone. Further, a text message between them indicated that Ms. Stagg had Defendant's license in her car on September 2, 2014.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. After reviewing the record, this court notes one error patent. The defendant was charged with three separate counts of simple burglary by three separate bills of information. Defendant thereafter waived his right to a jury trial and elected to be tried by the trial judge alone. On September 16, 2017, the State filed a motion to consolidate the cases for trial. That motion was granted in writing by an order of the trial court that same day. However, a hearing on a motion for severance of the cases for trial by counsel for Defendant was heard on October 3, 2017. At the conclusion thereof, the trial court denied the motion. The trial court gave oral reasons for the denial as follows:

> As far as the Motion for Severance these are very old cases, I think justice would be served, we need to bring closure to this, I'm going to . . . I see no reason to grant a severance under the circumstances presented, especially when the cases are so close in time and have so many common threads that appear from the testimony that I've heard here today.

3

> I think justice would be served by this one day, everybody wants their day in court, let's get the day in court, let's do it, let's close the door and let's finish this. And the [] severance is going to be denied.

Counsel for Defendant objected to the ruling in open court immediately thereafter. The case proceeded to trial on October 18, 2017.

It appears the simple burglary offenses could have been charged in the same bill of information pursuant to La.Code Crim.P. art. 493:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

Since, however, the simple burglary offenses were charged in separate bills of information, they could not be consolidated for trial on the State's motion. Louisiana Code of Criminal Procedure Article 706 provides that on "motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment[,]" and thereafter, the case shall proceed "as if the prosecution were under a single indictment." Thus, only the defendant can move to consolidate two or more separately indicted offenses for trial. In the present case, the State opted to file separate bills of information charging Defendant with three burglary offenses. Thereafter, it filed a motion to consolidate the offenses for trial, an act it is not permitted to do, and the trial court erred in signing the order granting the motion to consolidate. *See State v. Thomas*, 17-526 (La.App. 3 Cir. 12/13/17), 258 So.3d

4

708, where this court recognized the improper consolidation of offenses as an error patent but found the error was waived by the defendant's failure to object.

Defendant objected to the consolidation of the simple burglary offenses by filing a motion to sever, but Defendant does not raise any such error on appeal. In order to be considered a reversible error, the defendant must show that he was prejudiced by the consolidation:

> Consolidation of two or more criminal cases is governed by La.C.Cr.P. art. 706, which provides that "[u]pon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment." The provision has remained unchanged since the legislature added it to the Code of Criminal Procedure in the comprehensive 1966 revision, *see* 1966 La. Acts 310, although the legislature has since then considerably expanded the rules governing joinder of two or more criminal offenses in a single proceedings [sic]. The statute permits a defendant to intrude on the otherwise plenary discretion of the state to determine "whom, when, and how" to prosecute, La.C.Cr.P. art. 61, by moving the trial court to consolidate crimes the state has chosen to prosecute in separate cases. However, given Louisiana's present broad joinder rules, La.C.Cr.P. art. 706 does not confer on a defendant a statutory right to hold the state to its initial charging decision that he alone may waive by moving for consolidation of the charges. Assuming that the crimes are otherwise properly joined in a single prosecution as a matter of La.C.Cr.P. art. 493 or 493.2, the state may effect consolidation without the approval of the defendant or the court by filing a superceding indictment. *See* La.C.Cr.P. art. 706, Off'l Cmt.1966 ("[T]he state can accomplish the same result by dismissing all charges and recharging in a consolidated form."). The state may also achieve the same end by exercising its authority under La.C.Cr.P. art. 487 to make substantive amendments to an indictment at any time before the beginning of trial, subject to the defendant's right under La.C.Cr.P. art. 489 to move for a continuance if the amendment has led to his prejudice. *See State v. Lovett*, 359 So.2d 163, 166 (La.1978) . . . .
>
> In the present case, the state's "housekeeping" immediately before trial did not involve formal consolidation of the cases through the filing of a superceding indictment or amendment of the original indictments. However, for purposes of appellate review, whether the claim involves misjoinder of offenses, prejudicial joinder, or improper consolidation, the defendant must show prejudice to establish that trial of two or more crimes in a single proceeding "affect[ed] his

5

substantial rights." La.C.Cr.P. art. 920; *see State v. Strickland*, 94-0025, p. 13 (La.11/1/96), 683 So.2d 218, 226 . . . .

> We therefore agree with the court of appeal's observation in the present case that "[t]he same considerations used by the trial court in determining whether prejudice may result from joinder can also be used to determine whether prejudice results from consolidation." [*State v.*] *Crochet*, 04-0628 at 6, [(La.App. 1 Cir. 12/17/04),] 897 So.2d 731, 735. Those considerations include "whether the jury would be confused by the various charges; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile." *State v. Washington*, 386 So.2d 1368, 1371 (La.1980).

*State v. Crochet*, 05-123, pp. 3-6 (La. 6/23/06), 931 So.2d 1083, 1085-87 (footnote omitted) (first, third, fourth, and fifth alterations in original).

The trial in the present case was a bench trial, before a trial judge rather than a jury, which lessened any chance of prejudice from the effects of multiple crimes being presented at one trial. Moreover, Defendant does not allege to this court any prejudice regarding the consolidation of his offenses for trial. Thus, based on the lack of any allegation of prejudice, we find the error does not warrant reversal.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant argues that the evidence adduced by the State at trial was insufficient to support his convictions, as it failed to exclude a reasonable hypothesis of innocence, i.e., that Ms. Stagg was the burglar.

> Under the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." When reviewing a conviction based upon circumstantial evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been

excluded. *See State v. Morris*, 414 So.2d 320, 321-22 (La. 1982) (citation omitted); *see also State v. Captville*, 448 So.2d 676, 680 (La. 1984) ("When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt."). The reviewing court "does *not* determine whether another *possible* hypothesis has been suggested by defendant which *could* explain the events in an exculpatory fashion[; rather, the reviewing court] evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational factfinder could not 'have found proof of guilt beyond a reasonable doubt.' " *Captville*, 448 So.2d at 680 (emphasis in original; citation omitted).

*State v. Lewis*, 17-81, pp. 3-4 (La. 10/18/17), 236 So.3d 1197, 1198-99 (per curiam) (alteration in original).

Defendant notes that none of the items from any of the pharmacies were found in his possession or in his residence, that there were no fingerprint or DNA matches to him, that the tools recovered at his residence were not unique in the commission of burglaries, that the cellphone location evidence did not show precise locations, that there was no directly-incriminating evidence in any of the text messages admitted at trial, that there was evidence that Ms. Stagg had been in possession of Defendant's driver's license at some point, and finally that Ms. Stagg testified that she never told police that Defendant was involved and that they paraphrased her words to implicate him. He also suggests that one of the other co-defendants could have borrowed his cellphone from Ms. Stagg.

The evidence that Defendant burglarized Scallan's Pharmacy in Plaucheville is strong. The cell tower location evidence places his cellphone in the vicinity of the relevant drug store in the predawn hours of the relevant date, then moving back to Baton Rouge area. It is true that Ms. Stagg testified that she sometimes had Defendant's license, and text messaging from an earlier date supported this point.

7

However, this does little to negate the cellphone tower location evidence that placed both of their phones near the scene and on the subsequent path back to the Baton Rouge area. Further, they communicated with one another at or near the scene; thus, the phone was not sitting unused in Ms. Stagg's vehicle. Also, the cell tower location evidence showed Defendant's phone on a path from the crime scene to a location near his home. This lessens the reasonableness of Defendant's suggestion that someone else had his cellphone.

Further, there was reason for the fact finder to be skeptical of Ms. Stagg's credibility at trial, as there was police testimony that she had implicated Defendant during an earlier interview. Also, the evidence of the tools and mask found at his residence, although not strong in and of itself, but gains strength when viewed in light of the other evidence. Further, the evidence showed that the investigation proceeded successfully due to the fact that Defendant's driver's license was found at the scene of another Avoyelles Parish pharmacy burglary that was similar to the one at issue. As in the present matter, cellphone tower location evidence from that case and the other consolidated case connected Defendant to the crime scenes. The evidence from the three consolidated cases showed a general scheme to burglarize Avoyelles Parish pharmacies.

For the reasons discussed in regard to the Scallan's Pharmacy burglary, the alternative hypothesis proposed by Defendant, i.e., that Ms. Stagg was the offender and not him, is not sufficiently reasonable to negate the trial court's finding that the State proved its case beyond a reasonable doubt.

## CONCLUSION

Shelton Broadway's conviction for simple burglary of Scallan's Pharmacy is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.