STATE OF LOUISIANA

VERSUS

ROGER BARBER

NO. 19-KP-286

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW
FROM THE SECOND PARISH COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. S1287425, DIVISION "A"
HONORABLE ROY M. CASCIO, JUDGE PRESIDING

October 02, 2019

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Robert A. Chaisson

**WRIT GRANTED; CONVICTION AND SENTENCE REVERSED**
    **FHW**
    **JGG**
    **RAC**

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA

     Honorable Paul D. Connick, Jr.

     Terry M. Boudreaux

     Darren A. Allemand

     Lonnie Taix

COUNSEL FOR DEFENDANT/RELATOR,
ROGER BARBER

     J. Thomas Beasley

**WICKER, J.**

This is a post-conviction misdemeanor writ application in which defendant/relator, Roger Barber, seeks review of his conviction and sentence on a misdemeanor charge of driving while intoxicated, first offense, in violation of La. R.S. 14:98. For reasons that follow, we grant the writ and reverse the conviction and sentence.

Defendant was charged by bill of information with the offense of driving while intoxicated, first offense, in violation of La. R.S. 14:98, and convicted as charged after a bench trial on the merits.[1] The court sentenced defendant to 60 days in parish prison, suspended, and placed defendant on active probation for a term of 11 months. Special conditions of the probation included the completion of a driver improvement program, substance abuse program, 32 hours of community service, and attendance at a victim impact panel. The court further ordered defendant to serve 48 hours of home incarceration and imposed a $500.00 fine plus court costs.

Defendant filed this timely writ application seeking review of his conviction and sentence on June 17, 2019. On June 21, 2019, this Court ordered that defendant supplement his writ application with the trial transcript within fifteen days of this Court's order. The writ application has been supplemented as ordered and will now be considered.

**FACTS**

On February 8, 2015, two Jefferson Parish police deputies, Jesse Dormoy and Paul Carmouche, were dispatched to the 300 block of Westmeade in the Bellemeade Subdivision to investigate a report that a male driver was passed out,

---

[1] Defendant was also charged with, and convicted of, possession of an alcoholic beverage in a vehicle, although it does not appear from the writ application that the court sentenced defendant on that conviction. However, since defendant does not object to that conviction, any issues relating to this conviction will not be considered herein.

sleeping behind the wheel of his parked car. Upon arrival, the deputies found a vehicle parked partially in the roadway and partially on the curb in front of a residence. The driver was asleep at the wheel, the engine was running, and the door of the vehicle was unlocked. Deputy Carmouche opened the door, turned off the engine and removed the keys for safety. After some effort, Deputy Carmouche was able to awaken the driver and discovered that he had a can of beer in his lap. Once outside of his vehicle, defendant refused a standardized field sobriety test. Deputy Carmouche testified that the smell of alcohol was present in the vehicle and defendant appeared intoxicated because his speech was slurred and his eyes were bloodshot. A subsequent test revealed a blood alcohol content of .160%. Defendant stipulated to his intoxication level at trial.

Defendant testified at trial. In his testimony, he explained that he parked his truck earlier in the day in front of his father's house on Westmeade Drive. His friend, Carrie Dufrene, picked him up in the early afternoon and drove them to a Mardi Gras parade in Metairie. Ms. Dufrene drove back to defendant's parents' home on the Westbank at about midnight. Defendant explained that his vehicle was parked at a strange angle because when he arrived at noon there were several cars parked in and near the driveway. He further explained that the placement of a storm drain and a light pole necessitated that he park at an angle. Defendant testified that this was not a problem because the street is not a through street and his vehicle was not obstructing traffic. It was also revealed at trial that Ms. Dufrene had passed away since the incident and consequently there was no one to corroborate defendant's testimony.

Defendant testified that, although he lived nearby, he did not want to drive home drunk after the parade at midnight. Defendant explained that he intended to sleep in his truck and wait until he was sober in the morning to go into his father's home for coffee. He also stated that he had done this many times before to avoid

confrontation with his father who became angry on prior occasions when his son came home drunk.

Defendant admitted to being intoxicated and stated that he did not drive, and never intended to drive that night. He stated that he turned on the engine so that he could heat the vehicle as it was a cold night in February. He never put the car in gear. He pointed out that if he had engaged the transmission, the doors would have locked automatically and Deputy Carmouche would not have been able to open the door after he was asleep.

Essentially, the State proved that defendant was intoxicated, that he got into his car, started the engine, turned on the radio and the heater. In closing at trial, the State argued that that activity constituted control and operation of the vehicle for purposes of a conviction under La. R.S. 14:98.

Defense counsel countered that there is no direct evidence that defendant was driving the vehicle while intoxicated on the day of the incident. He argued that there was no "operation" of the vehicle in that defendant did not exercise control or manipulation over the vehicle such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion.

Ultimately, the trial court found defendant guilty as charged.

## LAW AND ANALYSIS

The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In our review we must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *State v.*

*Captville*, 448 So.2d 676, 678 (La. 1984).  However, when, as in the matter before us, circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove."  La. R.S. 15:438.  The Supreme Court has recently explained the relationship between the *Jackson* standard and the rejection of the hypothesis of innocence in the absence of direct evidence as follows:

> In addition, the *Jackson* standard of review does not allow a jury to speculate on the probabilities of guilt where rational jurors would necessarily entertain a reasonable doubt.  The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation.  Nonetheless, the *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"  *State v. Leger*, ___So.3d at ___, 2019 WL 2750867, pp. 12-13, 17-2084 (La. 6/26/19) (citations omitted).

The crime of first offense of operating a vehicle while intoxicated is defined in pertinent part as "the operating of any motor vehicle…when… (t)he operator is under the influence of alcoholic beverages."  La. R.S. 14:98 (A)(1)(a).  For a conviction, the State must prove that defendant was operating a motor vehicle while under the influence of alcohol.  Accordingly, the two essential elements of the crime are intoxication and operation of a vehicle.  The first element, intoxication, was conceded by defendant and is not at issue herein.  It is the second element, that of operation of a motor vehicle, that is the focus of our review.  The question now becomes, was the defendant "operating" the vehicle within the meaning of the statute while he was intoxicated.

To obtain a conviction under La. R.S. 14:98, the State must prove that the defendant did operate his vehicle while intoxicated on the day in question.  *State v. Sims*, 426 So.2d 148, 155 (La. 1983).  The term *operating* is broader than the term *driving*.  Operating in some circumstances may mean handling the controls of a

vehicle. *City of Bastrop v. Paxton*, 457 So.2d 168, 169 (La. App. 2nd Cir. 1984).

In order to operate a motor vehicle, the defendant must have exercised some

control or manipulation over the vehicle, such as steering, backing, or any physical

handling of the controls for the purpose of putting the car in motion. It is not

necessary that these actions have any effect on the engine, nor is it essential that

the car move in order for the State to prove the element of operation. *State v.*

*Brister,* 514 So.2d 205, 207 (La. App. 3rd Cir. 1987). A person begins to operate

the instant he begins to manipulate the machinery of the vehicle for the purpose of

putting the car in motion. *Id.*

In the matter before us, there is no direct evidence that defendant was

driving the vehicle while intoxicated. The initial report was made anonymously

and the caller only stated that a man was asleep at the wheel of a parked car. Both

deputies testified that defendant was sound asleep, seated behind the wheel of his

parked vehicle with the engine running when they arrived. Neither deputy saw

defendant driving, manipulating the steering wheel, pushing the brakes or violating

any traffic laws. Defendant was sleeping so heavily that waking him was difficult

for the deputies. He never tried to engage the transmission, or move the vehicle in

any way and did not resist the officers. Notably defendant was parked in front of

his parents' home.

Thus, defendant was convicted on circumstantial, rather than direct

evidence. For purposes of appellate review, the issue of whether there is total lack

of circumstantial evidence to prove the crime (or an essential element of it) is

decided by whether or not there is some evidence from which the trier of fact could

reasonably conclude beyond a reasonable doubt that the accused had committed

every element of the crime with which charged. *State v. Lindinger*, 357 So.2d 500,

501 (La. 1978). Our inquiry is whether the evidence before the trier of fact

excludes every other reasonable hypothesis than that the accused, admittedly found later to be intoxicated, had "operated" the motor vehicle while so intoxicated. *Id.*

Defendant's testimony that he did not drive after he became intoxicated was undisputed. The vehicle was parked, albeit at an angle, on the side of the street in front of his parents' home. It was not blocking the roadway or at a commercial establishment. No evidence was presented to show that defendant attempted to move the vehicle.

We find that defendant's testimony that he drove his vehicle to his parents' home while sober, rode with a friend to a parade in Metairie where he became intoxicated and then rode back to his parents' home with that friend is a plausible and reasonable hypothesis of innocence. Defendant's testimony that he stayed in his parked car because he did not want to drive drunk and did not want to disturb his parents completes a version of events that is reasonable and fits with the undisputed facts.

In finding the defendant guilty the trial court stated:

> (t)he Court finds that there's greatly distinguishing factors from the memo that was presented by the defendant. The Court finds that the laws from the Supreme Court guidance is when you're in a vehicle, you start a vehicle, you have full control of the vehicle, you might not have rolled off the –onto—well, you don't even have to roll onto the streets. You may not have actually put it in gear, but if you have the opportunity and it's under your control, it's – it's under your control that you can do it at any point that you want. And I think that's part of the rationale is that you don't sit there and before you have an opportunity to put it in gear and cause trouble, you can be stopped and found guilty.

We find it significant that the trial court did not make factual findings or statements regarding defendant's credibility. Nor, is there any indication that the court found defendant's version of events to be implausible or an unreasonable hypothesis of innocence. The trial court seems to have ruled that the possibility and opportunity to move the vehicle is sufficient to convict defendant of the crime

charged. We disagree. It is axiomatic that State must prove defendant committed a crime, not merely that the situation presented an opportunity to commit a crime.

Jurisprudence on this issue persuades us that the ruling of the trial court must be reversed. Prior cases affirming a conviction for driving while intoxicated have involved factual scenarios in which the defendant was found sleeping in a vehicle stopped in the middle of a roadway, *State v. Lewis*, 17-0081 (La. 10/18/17), 236 So.3d 1197, stopped in a lane of traffic on the Jefferson Highway. *State v. Winstead*, 16-217 (La. App. 5 Cir. 5/26/16), 193 So.3d 565, *writ not considered*, 16-1380 (La. 5/19/17), 219 So.3d 335, at a gas station pressed against a raised sidewalk. *State v. Wall* 14-539 (La. App. 5 Cir. 12/23/14), 209 So.3d 962, stopped on the roadway on the lower level of the Westbank Expressway. *State v. White*, 09-1071 (La. App. 5 Cir. 6/29/10), 44 So.3d 750, *writ granted*, 10-1799 (La. 2/25/11), 58 So.3d 454, and *rev'd on other grounds*, 10-1799 (La. 7/1/11), 68 So.3d 508, on the sidewalk, half in a parking lot, with its front end wedged against a brick column in front of a business, *State v. Abarca*, 07-0405 (La. App. 1 Cir. 9/14/07), 2007 WL 2685051, and in the median, *State v. Blancaneaux*, 535 So.2d 1338 (La. App. 5 Cir. 1988). All of these cases present factual scenarios in which a finding that an intoxicated defendant could not have gotten to the location without driving under the influence of alcohol was reasonable. Further, none of these defendants presented a reasonable hypothesis of innocence. Thus, a conviction on circumstantial evidence was supported by the totality of the circumstances.

In *State v. Rossi*, 98-1253 (La. App. 5 Cir. 4/14/99), 734 So.2d 102, *writ denied*, 99-0605 (La. 4/23/99), 742 So.2d 886, this Court overturned a conviction of driving while intoxicated where a defendant was found sitting in the driver's seat of his car while parked in front of his house. The car was running, but no evidence was presented to indicate that the defendant was in the process of operating the

vehicle. The *Rossi* court found the total circumstances, even when viewed most favorable toward the prosecution, simply do not show sufficient physical handling of the controls of the car to convict him of "operating" the vehicle. *Rossi,* 734 So.2d 102, 103, (citing *City of Bastrop v. Paxton*, *supra*).

We find the *Rossi* case to be factually comparable to the matter before us and find the reasoning in *Rossi* to be sound. We further find there is insufficient evidence to support the conviction. Considering the totality of the circumstances, the State failed to prove the elements of the crime beyond a reasonable doubt. The total circumstances, even when viewed most favorably toward the prosecution, simply do not show sufficient physical handling of the controls of the vehicle by defendant to convict him of "operating" the vehicle. *City of Bastrop*, *supra.* The total circumstances did not exclude the hypothesis of innocence that defendant did not operate the vehicle while intoxicated. Accordingly, we reverse defendant's conviction and sentence.

**WRIT GRANTED; CONVICTION AND SENTENCE REVERSED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 2, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
MARY E. LEGNON
INTERIM CLERK OF COURT

# 19-KP-286

**E-NOTIFIED**
2ND PARISH COURT (CLERK)
HONORABLE ROY M. CASCIO (DISTRICT JUDGE)
J. THOMAS BEASLEY (RELATOR)     TERRY M. BOUDREAUX (RESPONDENT)     THOMAS J. BUTLER (RESPONDENT)
DARREN A. ALLEMAND (RESPONDENT)

**MAILED**
HON. PAUL D. CONNICK, JR. (RESPONDENT)
DISTRICT ATTORNEY
LONNIE P. TAIX (RESPONDENT)
ASSISTANT DISTRICT ATTORNEYS
JEFFERSON PARISH DISTRICT ATTORNEY'S
OFFICE
200 DERBIGNY STREET
GRETNA, LA 70053